[Cite as *SP9 Ent. Trust v. Brauen*, 2014-Ohio-4870.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

SP9 ENTERPRISE TRUST, ET AL.,

    PLAINTIFFS-APPELLANTS/          CASE NO.  1-14-03
    CROSS-APPELLEES,

    v.

DONALD K. BRAUEN, ET AL.,

                            O P I N I O N

    DEFENDANTS-APPELLEES/
    CROSS-APPELLANTS.

Appeal from Allen County Common Pleas Court
Trial Court No. CV20120235

Judgment Affirmed; Cross-Appeal Dismissed

Date of Decision:   November 3, 2014

APPEARANCES:

    *Michael A. Rumer and Zachary D. Maisch* for
               Appellants/Cross-Appellees

    *Kevin A. Lantz*  for Appellees/Cross-Appellants

**PRESTON, J.**

{¶1} Plaintiffs-appellants/cross-appellees, SP9 Enterprise Trust ("SP9") and S&K Rolloff Service, LLC ("S&K"), appeal the January 17, 2014 judgment entry of the Allen County Court of Common Pleas dismissing SP9 and S&K's complaint for declaratory relief against defendants-appellees/cross-appellants, Donald K. Brauen, Rod Goldsberry, and Gary L. Lugibihl, individually and as Richland Township Trustees, and Michael D. Zimmerly ("Zimmerly"), Richland Township Zoning Inspector (collectively, the "Township Parties"). The Township Parties appeal the trial court's January 17, 2014 judgment entry, in which it concluded that SP9 and S&K's complaint was not barred by res judicata, and the trial court's January 15, 2014 entry denying in part the Township Parties' Civ.R. 41(B)(2) motion, made at the conclusion of SP9 and S&K's case at trial. For the reasons that follow, we affirm the judgment of the trial court and dismiss the Township Parties' cross-appeal.

{¶2} This case stems from S&K's operation of a "rolloff" business at a property in Richland Township, Allen County, Ohio owned by SP9. "Rolloff" containers, or "rolloffs," are open-topped, rectangular containers that are larger than dumpsters and range in capacity from 15 to 40 cubic yards. S&K provides rolloffs to customers for use at construction and demolition projects, political subdivision cleanups, and house cleanouts, among other things. The property owned by SP9 at which S&K operates is zoned as a "B-2 General Business

District." Under the applicable zoning resolution—the 1995 Zoning Resolution for Richland Township (the "Resolution")—uses permitted in a B-2 General Business District include, among others, the "[s]ale at retail of any industrial product including the repair or maintenance of equipment or facilities used in any residential or industrial connection," "[a]utomotive and [r]elated [u]ses," and "[e]ssential services." Zimmerly concluded that S&K's use of the property violated the Resolution. On January 5, 2012, Zimmerly sent a notice of zoning violation (the "NOV") to Robert Spallinger ("Robert"), statutory agent and member of S&K and managing co-trustee of SP9.

{¶3} On March 26, 2012, SP9 and S&K filed a complaint containing three counts against the Township Parties: declaratory judgment, claiming that S&K's use of the property is a permitted use under the Resolution because S&K is a public utility and "essential service" and because use of the property is "incidental to the sale of an industrial product and the maintenance of equipment used in a residential connection"; declaratory judgment, claiming in the alternative that its operation on the property constituted a nonconforming use for which no permit was necessary; and "tortious interference with economic relations." (Doc. No. 1).

{¶4} On May 9, 2012, the Township Parties filed their answer. (Doc. No. 9). Among their affirmative defenses, the Township Parties asserted that SP9 and S&K "failed to exhaust administrative remedies" and that SP9 and S&K's "claims

are precluded pursuant to the doctrines of res judicata, collateral estoppel, issue preclusion and claim preclusion." (*Id.*).

**{¶5}** On June 18, 2012, the Township Parties filed a Civ.R. 12(C) motion for judgment on the pleadings, arguing in part that SP9 and S&K failed to exhaust their administrative remedies. (Doc. No. 10). SP9 and S&K filed their memorandum in opposition on June 28, 2012. (Doc. No. 12). The trial court denied the Township Parties' motion on July 9, 2012. (Doc. No. 15). The trial court concluded in part that, "construing all reasonable inferences in favor of plaintiffs," SP9 and S&K "were not properly served with notices of the alleged zoning violation" and therefore "had no administrative remedy to exhaust." (*Id.*).

**{¶6}** On November 5, 2012, SP9 and S&K dismissed the third count of their complaint for "tortious interference with economic relations." (Doc. No. 22).

**{¶7}** On February 1, 2013, the Township Parties filed a motion for summary judgment. (Doc. No. 37). Among other arguments, the Township Parties argued that SP9 and S&K's claims were barred: by the doctrine of res judicata based on two criminal convictions against Robert for zoning violations on a nearby parcel also owned by SP9 and based on an order of the Allen County Court of Common Pleas in an appeal challenging Richland Township's denial of an application of SP9 to rezone; and because SP9 and S&K failed to exhaust their administrative remedies. (*Id.*). SP9 and S&K filed their memorandum in opposition on May 24, 2013. (Doc. No. 51). In their memorandum in opposition,

SP9 and S&K conceded that S&K does not qualify as a "public utility," and they withdrew that portion of their first count for declaratory judgment. (*Id.*). The Township Parties filed a reply in support of their motion for summary judgment on June 3, 2013. (Doc. No. 53). On June 26, 2013, the trial court filed an entry denying the Township Parties' motion for summary judgment. (Doc. No. 58). In it, the trial court again concluded in part that, "[c]onstruing the evidence submitted in favor of plaintiffs," SP9 and S&K "were not served with notices of the alleged zoning violation" and therefore "had no administrative remedy to exhaust." (*Id.*). The trial court also concluded that SP9 and S&K's complaint was not barred by res judicata. (*Id.*).

**{¶8}** The trial court held a bench trial on January 14 and 15, 2014. (Jan. 14-15, 2014 Tr., Vol. One, at 1). On January 14, 2014, at the conclusion of SP9 and S&K's case, the Township Parties moved for involuntary dismissal under Civ.R. 41(B)(2), arguing that based on the facts and the law, SP9 and S&K did not show a right to relief under their remaining declaratory judgment counts. (*Id.* at 183). The trial court took the matter under advisement and recessed for the evening. (*Id.* at 189). The next morning, the trial court announced its decision from the bench and filed an entry denying in part and granting in part the Township Parties' Civ.R. 41(B)(2) motion. (Jan. 14-15, 2014 Tr., Vol. Two, at 191-198); (Doc. No. 79). Specifically, the trial court concluded that: SP9 and S&K did not present sufficient proof to support their claims that their use of the

property is permitted as a "truck terminal" under the 1963 Zoning Resolution in effect before the Resolution or is a legal nonconforming use; SP9 and S&K presented sufficient proof to support their claim that S&K's operation involves the "[s]ale at retail of any industrial product including the repair or maintenance of equipment or facilities used in any residential or industrial connection" and is therefore a permitted use under the Resolution. (Doc. No. 79). The trial proceeded, and at its conclusion, the trial court took the case under advisement. (Jan. 14-15, 2014 Tr., Vol. Two, at 311).

{¶9} On January 17, 2014, the trial court filed its decision and judgment entry. (Doc. No. 81). In it, the trial court concluded that the Township Parties: did not prove their affirmative defense that SP9 and S&K's complaint was barred by the doctrine of res judicata; proved their affirmative defense that SP9 and S&K's complaint was barred because SP9 and S&K failed to exhaust the administrative remedies available to them. (*Id.*). Accordingly, the trial court dismissed SP9 and S&K's complaint. (*Id.*).

{¶10} On February 13, 2014, SP9 and S&K filed a notice of appeal of the trial court's January 17, 2014 judgment entry. (Doc. No. 83). They raise two assignments of error for our review. On February 24, 2014, the Township Parties filed a notice of cross-appeal, challenging the trial court's January 15, 2014 and January 17, 2014 judgment entries. (Doc. No. 86). They raise two assignments of

error for our review. Because they are dispositive, we address only SP9 and

S&K's assignments of error.

### SP9 and S&K's Assignment of Error No. I

**The trial court erred in finding the appellants had a duty to exhaust administrative remedies when neither SP9 nor S&K had been issued notice of a zoning violation for the use of the property at issue and had no standing to bring an administrative appeal.**

### SP9 and S&K's Assignment of Error No. II

**The trial court erred when it determined that appellees had met their burden of proof as to the affirmative defense of appellants' failure to exhaust administrative remedies.**

{¶11} In their assignments of error, SP9 and S&K argue that the trial court

erred when it concluded that they had administrative remedies available to them

and that their failure to exhaust those administrative remedies precluded them

from seeking declaratory relief against the Township Parties. The trial court relied

on Civ.R. 4, which it "decide[d] is applicable to service of the NOV," and

concluded that service of the NOV on SP9 and S&K satisfied Civ.R. 4 and the

requirements of due process. SP9 and S&K argue that "the civil rules have no

application to a zoning violation charge at the stage the trial court imposed them"

and that "since zoning violation enforcement is an exercise of the township's

police powers any notice is required to be in the name of the party being charged

with the violation." (SP9 and S&K's Brief at 5). SP9 and S&K also argue that

because the NOV was not served on them, they did not have standing to appeal the

NOV. Finally, SP9 and S&K argue that the Township Parties bore the burden of proof as to their affirmative defense of exhaustion of administrative remedies and that the Township Parties "presented no evidence to prove failure to exhaust." (*Id.* at 10).

{¶12} SP9 and S&K suggest that because "[t]his litigation deals with whether the facts confer standing on SP9 and S&K to assert a claim for declaratory judgment pursuant to R.C. Chapter 2721," we should apply a de novo standard of review. (SP9 and S&K's Brief at 11). The Township Parties suggest that we should apply "a manifest weight standard of review to a civil appeal from a bench trial." (Township Parties' Brief at 7). We disagree with all of the parties.

{¶13} In *Mid-American Fire and Casualty Co. v. Heasley*, the Supreme Court of Ohio held, "Dismissal of a declaratory judgment action is reviewed under an abuse-of-discretion standard." 113 Ohio St.3d 133, 2007-Ohio-1248, paragraph two of the syllabus. The Court in *Arnott v. Arnott* clarified its *Mid-American* holding, "reiterat[ing] that the abuse-of-discretion standard applies to the review of a trial court's holding regarding justiciability; once a trial court determines that a matter is appropriate for declaratory judgment, its holdings regarding questions of law are reviewed on a de novo basis." 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 13. *See also Fagan v. Boggs*, 4th Dist. Washington No. 10CA17, 2011-Ohio-5884, ¶ 13-14 (discussing *Mid-American* and the abuse-of-

discretion and de novo standards of review in an appeal following a bench trial on the appellee's declaratory-judgment complaint).

{¶14} SP9 and S&K's assignments of error challenge the trial court's dismissal of their declaratory-judgment action based on the conclusion that proceeding with the action would have been improper because they failed to exhaust their administrative remedies. We review that decision of the trial court under an abuse-of-discretion standard. *See Arnott* at ¶ 13; *Pointe At Gateway Condominium Owner's Assn., Inc. v. Schmelzer*, 8th Dist. Cuyahoga Nos. 98761 and 99130, 2013-Ohio-3615, ¶ 34, citing *In re Arnott*, 190 Ohio App.3d 493, 2010-Ohio-5392, ¶ 19 (4th Dist.). *See also State ex rel. Patrick Bros., A Gen. Partnership v. Putnam Cty. Bd. of Commrs.*, 3d Dist. Putnam No. 12-13-05, 2014-Ohio-2717, ¶ 17, citing *Arnott*, 132 Ohio St.3d 401, at ¶ 13. An abuse of discretion consists of more than an error of judgment; rather, it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶15} Generally, "[a] party filing a complaint for declaratory judgment must first exhaust any administrative remedies before invoking the jurisdiction of the common pleas court." *M6 Motors, Inc. v. Nissan of N. Olmsted, L.L.C.*, 8th Dist. Cuyahoga No. 100684, 2014-Ohio-2537, ¶ 39, citing *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 462 (1997). "Where a party fails to exhaust available administrative remedies, allowing declaratory relief would serve 'only to

circumvent an adverse decision of an administrative agency and to bypass the legislative scheme.'" *Id.*, quoting *Fairview Gen. Hosp. v. Fletcher*, 63 Ohio St.3d 146, 152 (1992).

{¶16} However, "exhaustion of administrative remedies is not a necessary prerequisite to an action challenging the constitutionality of a statute, ordinance, or administrative rule." *Milliron Waste Mgmt., Inc. v. Crestline*, 135 Ohio App.3d 15, 18 (3d Dist.1999), citing *Jones* at 460. Nor is a party required to exhaust administrative remedies "if there is no administrative remedy available which can provide the relief sought," "if resort to administrative remedies would be wholly futile," or if "the available remedy is onerous or unusually expensive." *Karches v. City of Cincinnati*, 38 Ohio St.3d 12, 17 (1988).

{¶17} "The failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; rather, it is an affirmative defense." *M6 Motors, Inc.* at ¶ 39, citing *Jones* at 462. The party asserting the affirmative defense bears the burden of proving failure to exhaust administrative remedies by a preponderance of the evidence. *See Cleveland Constr., Inc. v. Kent State Univ.*, 10th Dist. Franklin No. 09AP-822, 2010-Ohio-2906, ¶ 48; *N. Fairfield Baptist Church v. G129, LLC*, 12th Dist. Butler No. CA2010-11-298, 2011-Ohio-3016, ¶ 19.

{¶18} Robert testified that he and his eight siblings are trustees of SP9. (Jan. 14-15, 2014 Tr., Vol. One, at 105). Robert is the managing co-trustee of

SP9, "oversee[ing] the day-to-day operations," including paying the taxes, bills, and insurance. (*Id.* at 105-106, 124). According to Robert, when someone needs to contact SP9, that person should contact him. (*Id.* at 124). SP9 owns property located at 7879 East Lincoln Highway, which is situated on the north side of the highway, and which the parties refer to as the "White Barn Property." (*Id.* at 105-106). SP9 also owns property located at 7878 East Lincoln Highway, which is situated on the south side of the highway, and which the parties refer to as the "Red Barn Property." (*Id.*).

{¶19} Robert and his wife, Sue Spallinger ("Sue") (collectively with Robert, the "Spallingers"), own S&K, which they formed in 2005. (*Id.* at 68-69, 106-107). Sue is S&K's "business manager/secretary" and bookkeeper. (*Id.* at 69, 76, 125). Robert is "in charge of day-to-day operations" at S&K. (*Id.* at 125). As we described above, S&K provides "rolloff service" to customers for "construction," "clean-ups," "clean outs," "demolition material," and "house cleaning debris." (*Id.* at 107, 123). S&K owns 30 rolloffs, some of which are stored on the White Barn Property when they are not being used by customers. (*Id.* at 118). S&K does not collect household refuse; however, Koogler Refuse, which is a household-refuse-collection business owned by Robert's brother-in-law, Nelson Koogler ("Nelson"), also operates out of the White Barn Property. (*Id.* at 88-91, 125).

{¶20} S&K has operated its rolloff business at the White Barn Property from its inception in 2005 to the present. (*Id.* at 122). According to Robert, nothing has changed in S&K's operation at the White Barn Property in that time, except for "[m]aybe a few more containers." (*Id.*). Since 2005, S&K has seen increased gross receipts and an increase in the number of rolloffs it places with customers. (*Id.* at 77, 82).

{¶21} S&K conducted a recycling operation at the Red Barn Property between 2009 and 2011. (*Id.* at 112-113, 135). In this operation, S&K accepted materials in rolloffs and other containers from a company called J&N Haulers, along with S&K, for sorting and recycling. (*Id.*). S&K stored its rolloffs at the Red Barn Property if it was using them for recycling. (*Id.* at 135-136). S&K also allowed J&N Haulers to store its rolloffs at the Red Barn Property. (*Id.* at 138). S&K ceased its recycling operation at the Red Barn Property in 2011. (*Id.* at 119, 157).

{¶22} In 2009, Zimmerly observed the sorting and recycling activity at the Red Barn Property, which he perceived to be a zoning violation. (Jan. 14-15, 2014 Tr., Vol. Two, at 209). On August 18, 2009, Zimmerly served on Robert a notice of zoning violation for zoning violations at the Red Barn Property—namely, "Operating a Recycling / Transfer Station in an agriculture building on your property located at the intersection of Lincoln Hwy. and Reppert Rd." (Jan.

14-15, 2014 Tr., Vol. One, at 140-141); (Jan. 14-15, 2014 Tr., Vol. Two, at 207-208); (Defendants' Ex. 19). Zimmerly addressed and served the notice:

> To: Robert Spallinger
> 6260 N. Phillips Road
> Bluffton, Ohio 45817

(*Id.*); (*Id.*); (*Id.*). The notice bore, "[P]art of Parcel # 28-3300-02-002.000," apparently the parcel number for the parcel constituting the Red Barn Property, and underneath that, "(Agriculture building located at Reppert Rd. and Lincoln Hwy.)." (Defendants' Ex. 19).

{¶23} The August 18, 2009 notice specified that "the storage of the dumpsters are [sic] not a permitted use"[1] based on the Red Barn Property being "situated in a B-2 General Business District." (Jan. 14-15, 2014 Tr., Vol. One, at 140); (Defendants' Ex. 19). While the notice said, "[W]e will allow you to continue the storage of [the dumpsters] until further arrangements have been made for the Recycling / Transfer Business," it ordered, "So at this time you are ordered to cease and desist from any further use of your Property for operation of a Recycling / Transfer Station business." (Defendants' Ex. 19). The notice also warned that failure to correct the zoning violation within 20 days of receiving the notice would result in "further legal action," including the imposition of penalties

---

[1] Nelson explained the "rolloff" and "dumpster" terms of the trade during his testimony. Whereas rolloffs are used for rolloff service, "dumpsters" ranging in capacity from two to six cubic yards are used for household refuse collection. (Jan. 14-15, 2014 Tr., Vol. One, at 94, 102). In the notices of zoning violations issued by Zimmerly to S&K, he had the rolloffs in mind when he referenced "dumpsters." (Jan. 14-15, 2014 Tr., Vol. Two, at 208-209). Zimmerly sometimes uses "rolloff" and "dumpster" interchangeably. (*Id.* at 208).

under Section 20.14 of the Resolution. (*Id.*). The notice also said, "[Y]ou may appeal this determination to the Board of Zoning Appeals, pursuant to Article 17.1 of the [Resolution] within 20 days." (*Id.*).

{¶24} Robert appealed the August 18, 2009 notice to the Board of Zoning Appeals of Richland Township (the "BZA"), but his appeal was denied. (Jan. 14-15, 2014 Tr., Vol. One, at 141-142); (Jan. 14-15, 2014 Tr., Vol. Two, at 216-217); (Defendants' Ex. 57). Robert did not appeal to the common pleas court the BZA's denial of his appeal. (Jan. 14-15, 2014 Tr., Vol. One, at 142). Rather, Richland Township withheld further legal action until Robert could pursue a change-in-zoning classification or an amendment adding recycling services to the permitted uses in the existing zoning classification. (*Id.*).

{¶25} Ultimately, those efforts failed, and Robert was criminally prosecuted for the zoning violations that occurred at the Red Barn Property. (*Id.* at 146). Robert identified Defendants' Exhibits 20 and 21 as criminal complaints filed against him in Lima Municipal Court on September 1, 2010 for zoning violations occurring on March 5, 2010 and April 27, 2010, respectively. (*Id.* at 146-148); (Defendants' Exs. 20, 21). Robert pled guilty to the zoning violations "[o]n [his] behalf and as Managing Member [sic] of SP9 Enterprise Trust," and in February 2011, the municipal court found him guilty and sentenced him in both cases. (Jan. 14-15, 2014 Tr., Vol. One, at 148-152); (Defendants' Exs. 22, 23, 24, 25). The municipal court suspended its sentences pending Robert's applying for

rezoning of the Red Barn Property and White Barn Property. (Defendants' Exs. 24, 25).

{¶26} SP9 applied for rezoning, but the Richland Township Trustees denied its request. (Jan. 14-15, 2014 Tr., Vol. One, at 152-153); (Defendants' Ex. 62). SP9 appealed that decision to the Allen County Court of Common Pleas, and when SP9 was unsuccessful there, it appealed to this court. (Jan. 14-15, 2014 Tr., Vol. One, at 154). While the appeal was pending before this court, SP9 moved in the common pleas court to stay execution of the judgment affirming the denial of rezoning or for a preliminary injunction, and the common pleas court denied the motion on November 1, 2011. (*Id.* at 154-155); (Defendants' Ex. 28). In 2013, Robert moved in his criminal cases in the municipal court to vacate his convictions, and the municipal court denied his motions. (Jan. 14-15, 2014 Tr., Vol. One, at 155-156); (Defendants' Exs. 26, 27).

{¶27} According to Zimmerly, despite Robert's convictions, operations at the Red Barn Property continued. (Jan. 14-15, 2014 Tr., Vol. Two, at 217-218). As a result, Zimmerly sent two notices of zoning violations to Robert on November 4, 2011, both pertaining to the Red Barn Property. (Defendants' Exs. 17, 18). As with the August 18, 2009 notice, Zimmerly addressed and served the November 4, 2011 notices:

> To: Robert Spallinger
> 6260 N. Phillips Road
> Bluffton, Ohio 45817

-15-

(Jan. 14-15, 2014 Tr., Vol. Two, at 218-219); (Defendants' Exs. 17, 18). The November 4, 2011 notices bore, "Parcel # 28-3300-02-002.000." (Defendants' Exs. 17, 18). One notice described the "nature of the Violation" as, "Operating a Roll-off Business and storage of dumpsters on [the Red Barn Property]." (Defendants' Ex. 17). The other notice described the "nature of the Violation" as, "Operating a Recycling / Transfer Station in an agriculture building and storage of dumpsters on [the Red Barn Property]." (Defendants' Ex. 18). Both notices noted that the Red Barn Property "is situated in a B-2 General Business District" and listed the uses permitted in that type of district. (Defendants' Exs. 17, 18). The notices ordered, "So at this time you are ordered to cease and desist from any further use of your property" for activities constituting the respective zoning violations, and the notices warned that failure to comply by November 4, 2011 would result in "further legal action," including the imposition of penalties under Section 20.14 of the Resolution. (*Id.*).

{¶28} Zimmerly noticed that after he sent the November 4, 2011 notices, the activity at the Red Barn Property "kind of stopped," but he also noticed the rolloffs "being stored at the [White Barn Property]." (Jan. 14-15, 2014 Tr., Vol. Two, at 219-220). Before that time, Zimmerly never remembered seeing any rolloffs at the White Barn Property, where he knew Koogler Refuse operated, and had no knowledge of S&K's operation at the White Barn Property, even though

S&K conducted rolloff operations at the White Barn Property since 2005. (*Id.* at 242-243).

**{¶29}** On January 5, 2012, Zimmerly served the NOV on Robert via certified mail. (Jan. 14-15, 2014 Tr., Vol. One, at 36-37, 158); (Jan. 14-15, 2014 Tr., Vol. Two, at 231); (Plaintiffs' Ex. 4). As with the August 18, 2009 notice and the November 4, 2011 notices, Zimmerly addressed the NOV:

> To: Robert Spallinger
> 6260 N. Phillips Road
> Bluffton, Ohio 45817

(*Id.*); (*Id.*); (*Id.*). According to Robert, the 6260 North Phillips Road address is Robert and Sue's residential address, as well as the business address for S&K and the contact address for SP9. (Jan. 14-15, 2014 Tr., Vol. One, at 158, 161, 177). Zimmerly was aware that S&K "operates" or "runs" from the 6260 North Phillips Road address, but the "equipment comes to the [White Barn Property]," in Zimmerly's words. (*Id.* at 54); (Jan. 14-15, 2014 Tr., Vol. Two, at 231). Robert received the NOV. (Jan. 14-15, 2014 Tr., Vol. One, at 158).

**{¶30}** The NOV bore, "Parcel # 28-2900-04-001.000," which is the parcel number for one of two SP9-owned parcels that constitute the White Barn Property. (*Id.* at 45-46); (Plaintiffs' Ex. 4). The NOV described "[t]he nature of the Violation" as, "Operating a ***Roll-off Business and storage of dumpsters*** on the property located at 7879 E. Lincoln Hwy," which is "situated in a B-2 General Business District." (Emphasis sic.) (*Id.*); (*Id.*). The NOV continued by listing the

-17-

Case No. 1-14-03

"**USES PERMITTTED IN THE B-2 BUSINES DISTRICT**," then further explained the circumstances surrounding the violation and ordered cessation of the operation:

Your continued use of the property for the ***Roll-off business and dumpster storage*** is a clear violation of the permitted use for the property as outlined above.

It is obvious that all you have done is move the ***Roll-off Business and Dumpster storage*** to across the road from the previous property, which was found to be in Violation by the courts.

So where you moved the Business to, which is in a ***B-2 Business District*** is still a violation and is not allowed in the Richland Township.

So at this time you are ordered to cease and desist from any further use of the property for operation of a ***Roll-off Business and dumpster storage.***

Failure to comply with this order will result in further legal action being taken to rectify the situation, including but not limited to imposing penalties and fines pursuant to Article 20.14 of the Richland Township Zoning Resolution.

You are further informed that unless this Violation is corrected or otherwise made to comply by **Jan. 16, 2012**, you will be subject to

-18-

the Penalty as provided by **SECTION 20.14** of the **RICHLAND TOWNSHIP ZONING CODE**

**SECTION 20.14** provides in part, that:

" Any person who Violates this Code ( Resolution ) or fails to comply with any of its requirements, shall upon conviction thereof, be fined the maximum allowable pursuant to **SECTION 519.99** of the **OHIO REVISED CODE.** Each day such Violation notice is in effect shall be considered a separate offense. "

If you have any questions please contact this office so that we may discuss this Violation.

(Emphasis sic.) (Plaintiffs' Ex. 4).

**{¶31}** Robert is—and was as of the date of the NOV—a member of S&K, S&K's statutory agent, and the managing co-trustee of SP9, and he "represent[s]" SP9. (Jan. 14-15, 2014 Tr., Vol. One, at 159, 178-179); (Joint Ex. 2). S&K's form "statement" or "invoice," as described by Sue during her testimony, reads, "Robert Spallinger, Manager." (Jan. 14-15, 2014 Tr., Vol. One, at 69-70); (Plaintiffs' Ex. 10). "Robert E Spallinger" is listed as the proprietor of S&K on the Schedule C "Profit or Loss from Business (Sole Proprietorship)" form attached to the Spallingers' 2005, 2006, 2007, 2008, 2009, 2010, and 2011 federal income tax returns. (Jan. 14-15, 2014 Tr., Vol. One, at 78-82); (Joint Ex. 1).

**{¶32}** The trial court asked Robert during his testimony what he believed "rolloff business and storage of dumpsters" referred to, as Zimmerly used that phrase in the NOV. (Jan. 14-15, 2014 Tr., Vol. One, at 179-180). Robert responded, "Well, I'm just assuming they was thinking S & K Rolloff." (*Id.* at 180). The trial court also asked, "At all times when you've been involved with the Trustees, the Board of Zoning, the Zoning Commission, the Municipal Court, the Common Pleas Court, have you felt that you're representing S & K and SP9?" (*Id.*). Robert responded, "Yea, I guess, you know." (*Id.*). When Zimmerly served the NOV and the other notices of violation, he understood that Robert was "a member or operator" of S&K and the managing co-trustee of SP9. (Jan. 14-15, 2014 Tr., Vol. Two, at 208, 218, 231). However, Zimmerly admitted on cross-examination that he never served a notice of violation on either S&K or SP9. (*Id.* at 236).

**{¶33}** Robert's receipt of the NOV prompted him to attend the January 24, 2012 meeting of the Richland Township Trustees. (*Id.* at 158-159). At that meeting, Robert discussed with the Trustees the nature of his operation, and he questioned why he was in violation. (*Id.* at 159). After that meeting, Robert received a letter from Zimmerly dated February 15, 2012 regarding the zoning violations detailed in the NOV. (*Id.* at 160); (Plaintiffs' Ex. 4A). As with the NOV, Robert received the February 15, 2012 letter at the 6260 North Phillips Road address, and it was addressed:

Robert Spallinger
6260 N. Phillips Road
Bluffton, Ohio 45817

(*Id.* at 160-161); (*Id.*).   The letter bore, "(7879 E. Lincoln Hwy.)," just above, "Parcel # 28-2900-04-001.000."   (Plaintiffs' Ex. 4A).   In the letter, Zimmerly referred to Robert and Sue's attendance at the January 24, 2012 meeting and the zoning violation at the White Barn Property:

Robert,

On Tuesday January 24, 2012, You and Your wife attended our regular Richland Township Trustee meeting.   Greg Antalis, Tom Mazur, The Trustee's [sic], and myself gave you explanations on you Violating the Richland Township Zoning Code ( Resolution ).

You was [sic] sent a Notice on January 5, 2012 advising you that you were in Violation at this site.

Effective Monday, February 27, 2012 your ***Roll-off Business and dumpster storage*** must be removed from its current site.

You will be cited until the activities Cease.

(Emphasis sic.)  (*Id.*).

**{¶34}** Neither Robert, nor S&K, nor SP9 appealed the NOV to the BZA. (Jan. 14-15, 2014 Tr., Vol. One, at 161); (Jan. 14-15, 2014 Tr., Vol. Two, at 232-233).  SP9 and S&K filed their complaint in the underlying action on March 26, 2012.  (Doc. No. 1).

{¶35} The issue in this case is whether the trial court abused its discretion in concluding that the Township Parties proved by a preponderance of the evidence that SP9 and S&K failed to exhaust an administrative remedy that was available to them and that could have provided the relief they sought in their declaratory judgment action. To answer this question, we will examine whether the NOV satisfied the Resolution's notice and service requirements as to SP9 and S&K, whether SP9 and S&K could have appealed the NOV under the Resolution's appeal provisions, and finally whether SP9 and S&K could have obtained in any appeal the relief they sought in the declaratory-judgment action.

{¶36} We begin by reviewing the notice and appeal provisions of the Resolution. If the provisions of a zoning resolution are clear and unambiguous, a court applies them as written and does not construe or interpret them. *See State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 106 Ohio St.3d 70, 2005-Ohio-3807, ¶ 38.

{¶37} Section 20.13 of the Resolution governs the contents and service of notices of violation:

Whenever the Zoning Inspector or the Zoning Inspector's agent determines that there is a violation of any provision of this Resolution, a warning tag shall be issued and shall serve as a notice of violation. Such order shall:

20.13.1  Be in writing;

20.13.2     Identify the violation;

20.13.3     Include a statement of the reason or reasons why it is being issued and refer to the sections of this Resolution being violated; and,

20.13.4     State the time by which the violation shall be corrected.

20.13.5     Service of notice of violation shall be as follows:

a.     By personal delivery to the person or persons responsible or by leaving the notice at the usual place of residence of the owner with a person of suitable age and discretion;

b.     By certified mail deposited in the United States Post Office addressed to the person or persons responsible at a last known address.  If a certified mail envelope is returned with endorsement showing that the envelope is unclaimed, then service shall be sent by ordinary mail and the mailing shall be evidence by a certificate of mailing which shall be filed by the Zoning Inspector.  Service shall be deemed complete when the fact of mailing is entered of record provided that the ordinary mail envelope is not returned by the postal authorities with an endorsement showing failure of delivery; or,

c.     By posting a copy of the notice form in a conspicuous place on the premises found in violation.

(Plaintiffs' Ex. 2, Resolution at Section 20.13, at 20-3 to 20-4). Section 2.2 of the Resolution defines "person" as including "an individual, partnership, corporation, club or association." (*Id.* at Section 2.2, at 2-15).

Section 17.1 of the Resolution governs appeals to the BZA:

Pursuant to 519.15 of the Ohio Revised Code or as in such statute as it may hereafter be amended, appeals to the Board of Zoning Appeals concerning interpretation or administration of this Resolution may be taken by *any person aggrieved* or by any officer or bureau of the legislative authority of the Township affected by any decision of the Zoning Inspector. Such appeal shall be taken within twenty (20) days after the decision by filing, with the Zoning Inspector and with the Board of Zoning Appeals, a Notice of Appeal specifying the grounds upon which the appeal is being taken. The Zoning Inspector shall transmit to the Board of Zoning Appeals all the papers constituting the record upon which the action appealed was taken.

(Underline emphasis sic; italics emphasis added.) (*Id.* at Section 17.1, at 17-1). Section 17.1 of the Resolution references R.C. 519.15, which similarly provides, in part: "Appeals to the board of zoning appeals may be taken by *any person aggrieved* or by any officer of the township affected by any decision of the administrative officer." (Emphasis added.) R.C. 519.15.

-24-

{¶38} Section 20.14 of the Resolution sets forth the penalties and procedures for violations of the Resolution:

It shall be unlawful to erect, establish, locate, construct, reconstruct, enlarge, change, convert, move, repair, maintain or structurally alter any building, structure or land in violation of any provision of this Resolution or any amendment thereto. Any person, firm or corporation who violates this Resolution or fails to comply with any of its requirements shall be fined the maximum allowable pursuant to Section 519.99 of the Ohio Revised Code or in such statue [sic] as it may hereafter be amended. Each day such violation notice is in effect shall be considered a separate offense. The owner or tenant of any building, structure, premises or part thereof, and any architect, builder, contractor, agent or other person who commits, participates in, assists in or maintains such violation may each be found guilty of a separate offense and suffer the penalties herein provided.

(Emphasis sic.) (Plaintiffs' Ex. 2, Resolution at Section 20.14, at 20-4).

{¶39} SP9 and S&K do not argue that the NOV failed to satisfy the content requirements of Section 20.13. Indeed, the NOV was a written document, identified the violation, stated that the NOV was being issued because operating a rolloff business and storing dumpsters at the White Barn Property were not permitted uses under Section 8.1 of the Resolution, and stated January 16, 2012 as

-25-

the time by which the violation must be corrected.  (Plaintiffs' Ex. 4).  Rather, SP9 and S&K argue that they were not served with the NOV.

**{¶40}** We agree with SP9 and S&K that the trial court should not have applied the Rules of Civil Procedure to service of the NOV.  The Rules of Civil Procedure "prescribe the procedure to be followed in all *courts* of this state in the exercise of civil jurisdiction at law or in equity * * *."  (Emphasis added.)  Civ.R. 1(A).  The Rules of Civil Procedure apply only to court proceedings "unless specific statutes or regulations require them to apply to administrative proceedings."  *Moffett v. Salem City School Dist. Bd. of Educ.*, 7th Dist. Columbiana No. 2003CO7, 2003-Ohio-7007, ¶ 24, 32.

**{¶41}** Here, because the NOV was not issued in a proceeding pending in a *court* of this state, and because no statutory authority requires application of the Rules of Civil Procedure to the issuance of notices of violation, the Rules of Civil Procedure did not govern service of the NOV.  However, the trial court's application of the Rules of Civil Procedure was harmless because Zimmerly properly served the NOV under Section 20.13 of the Resolution, and because, under the circumstances, Zimmerly's service of the NOV comported with the requirements of due process as to SP9 and S&K.  *See Davis v. Widman*, 184 Ohio App.3d 705, 2009-Ohio-5430, ¶ 16 (3d Dist.), quoting *Advantage Bank v. Waldo Pub, L.L.C.*, 3d Dist. Marion No. 9-08-67, 2009-Ohio-2816, ¶ 46 ("[A] judgment

by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant."). *See also* R.C. 2309.59.

{¶42} Zimmerly served the NOV by certified mail under Section 20.13.5(b) of the Resolution. Section 20.13.5(b) provides that a notice of violation must be "addressed to the person or persons responsible." The Resolution defines "person," which includes an individual as well as a "partnership, corporation, club or association." SP9 is a trust, and S&K is a limited liability company. Although "trust" and "limited liability company" are not included by name in the definition of "person" under Section 2.2 of the Resolution, SP9 and S&K encourage us to construe the definition of "person" to include "trust" and "limited liability company." For purposes of our analysis in this opinion, we will assume, without deciding, that SP9 and S&K are "persons" under the Resolution.

{¶43} The Resolution does not define "responsible"; therefore, we must give that word its ordinary and natural meaning. *See Miller v. Canton*, 5th Dist. Stark No. 2011-CA-00093, 2011-Ohio-6783, ¶ 22, citing *Layman v. Woo*, 78 Ohio St.3d 485, 487 (1997). Black's Law Dictionary defines "responsibility" as, "The quality, state, or condition of being answerable or accountable." *Black's Law Dictionary* 1506 (10th Ed.2014). Webster's Third New International Dictionary offers many definitions for "responsible," with the most relevant being, "likely to be called upon to answer," "answerable as the primary cause, motive, or agent whether of evil or good," "creditable or chargeable with the result," and "liable or

subject to legal review or in case of fault to penalties." *Webster's Third New International Dictionary* 1935 (2002).

**{¶44}** Based on these definitions and the unique facts of this case, we conclude that service of the NOV satisfied Section 20.13 of the Resolution. Zimmerly addressed the NOV:

> To: Robert Spallinger
> 6260 N. Phillips Road
> Bluffton, Ohio 45817

(Plaintiffs' Ex. 4). In the body of the NOV, however, Zimmerly addressed—at no fewer than four points and in bold, italic font—the "Roll-off Business." Zimmerly also clearly identified the parcel at issue, "Parcel # 28-2900-04-001.000," and the physical address of the property, "7879 E. Lincoln Hwy.," owned by SP9. Robert is a member of and the statutory agent for S&K, and he is responsible for S&K's day-to-day operations. Robert is the managing co-trustee of and contact person for SP9. The address to which Zimmerly sent the NOV—6260 North Phillips Road, Bluffton, Ohio 45817—is the address for Robert individually, for Robert as S&K's agent, for Robert as SP9's managing co-trustee and contact person, for S&K, and for SP9. After Zimmerly served Robert with the August 18, 2009 notice, which noted the violation was based on a "Recycling / Transfer Station *business* on [the Red Barn Property]," it was Robert who appealed that notice to the BZA. (Emphasis added.) (Defendants' Exs. 19, 57). Robert testified that he

believed the NOV's use of "rolloff business and storage of dumpsters" referred to S&K.

**{¶45}** Based on Robert's legal relationships to S&K and SP9 and his having appealed the August 18, 2009 notice, Zimmerly could have properly concluded that Robert was the "person responsible" for the zoning violations described in the NOV. Therefore, it was proper to address the NOV to Robert. The body of the NOV makes clear that it was also addressed to S&K and SP9. The NOV was sent to the proper address for S&K and SP9, and the NOV addresses the "Roll-off Business" at "Parcel # 28-2900-04-001.000" and "7879 E. Lincoln Hwy." While the better practice would have been to include S&K and SP9 in the NOV's "To:" line along with Robert, Section 20.13.5(b) does not say *where* or *how* in a notice of zoning violation the person responsible must be addressed. Therefore, the NOV and Zimmerly's service of it satisfied the requirements of Section 20.13 of the Resolution, including as to SP9 and S&K, notwithstanding Zimmerly's cross-examination testimony to the contrary.

**{¶46}** SP9 and S&K do not challenge the constitutionality of Section 20.13 of the Resolution either facially or as applied. Nevertheless, the NOV satisfied the requirements of due process as to SP9 and S&K. "'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to

present their objections.'" *Prairie Twp. Bd. of Trustees v. Hay*, 10th Dist. Franklin No. 01AP-1198, 2002-Ohio-4765, ¶ 33, quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652 (1950). Here, the NOV was reasonably calculated under the circumstances to apprise SP9 and S&K of the zoning violations and the consequences of failing to rectify them. The NOV was sent to the proper address for SP9 and S&K. The "Roll-off Business," "Parcel # 28-2900-04-001.000," and "7879 E. Lincoln Hwy." were named in the NOV. Robert testified that he understood that the NOV referred to S&K's business. This demonstrates that the NOV was reasonably calculated to apprise SP9 and S&K of the zoning violations.

{¶47} SP9 and S&K rely heavily on *Hay*. That case is distinguishable for multiple reasons. In *Hay*, a township served a property co-owner with notices of zoning violations; however, the township did not serve the three other co-owners of the property with the notices. *Hay* at ¶ 2, 33. The township eventually filed a complaint for injunctive relief against the co-owners of the property, and the trial court concluded that the co-owners' failure to contest the zoning-violation determinations through the administrative appeal process deprived them of the opportunity to contest the township's determinations in the injunctive-relief proceeding. *Id.* at ¶ 11.

{¶48} On appeal, the three co-owners who were not served with the notices of zoning violations argued that the doctrine of exhaustion of administrative

remedies should not apply to them "because the notices of zoning violations were addressed and sent to Hay only, not to the other three defendants." *Id.* at ¶ 33. The Tenth District Court of Appeals agreed and noted that the notices of zoning violations were "addressed to Hay only." *Id.* The Tenth District reasoned, "Because Prairie Township did not properly serve the three other defendants with notice of zoning violations, the other defendants did not have the opportunity to appeal the alleged violation and thus cannot be deemed to have failed to exhaust administrative remedies." *Id.* The Tenth District reversed the trial court's judgment as to the three unserved co-owners, concluding that "the trial court improperly rendered judgment against them based on failure to exhaust administrative remedies * * *." *Id.* at ¶ 34.

{¶49} In this case, we concluded that while not a model notice of zoning violation, the NOV and Zimmerly's service of it satisfied the requirements of Section 20.13 of the Resolution as to SP9 and S&K. Although not clear from the opinion in *Hay*, it does not appear that the co-owner who was properly served maintained any sort of legal relationship with the other three co-owners, such as the legal relationships Robert shares with SP9 and S&K. It also does not appear from the *Hay* opinion that the served co-owner shared an address with the other three co-owners, as is the case here. Finally, unlike the three co-owners in *Hay*, SP9 and S&K had an opportunity to appeal the NOV, as we will explain below.

{¶50} We find service of the NOV in this case to be more like the service in *Felmly v. Buckeye Fireworks & Novelty, Inc.*, 11th Dist. Portage No. 1597, 1987 WL 6902 (Feb. 20, 1987). In that case, the Eleventh District Court of Appeals agreed with the trial court that addressing a notice of zoning violation to "Larry Lomaz" satisfied the requirements of Civ.R. 4.6(C), when at the time of the service, "Lomaz was president of the current owner, Northern Diversified, Inc." *Id.* at *2. In overruling Lomaz's assignment of error asserting that the allegedly improper service barred any zoning-enforcement efforts, the Eleventh District reasoned, "Clearly, Lomaz, as president of Northern Diversified, Inc., was a proper agent of the property owner to receive notice of the zoning violations." *Id.* While we decline to apply Civ.R. 4 in this case for the reasons we explained above, we agree with the reasoning supporting the Eleventh District's decision in *Felmly*. At least one other Ohio court has based decisions on similar reasoning. *See Litchfield Twp. Bd. of Trustees v. Nimer*, 9th Dist. Medina No. 11CA0037-M, 2012-Ohio-5431, ¶ 8 (rejecting the argument of property co-owners, husband and wife, that the township was not entitled to an injunction because it sent notice of the zoning violations only to the attention of the husband and not the wife); *Thrower v. City of Akron*, 9th Dist. Summit No. 21153, 2003-Ohio-1307, ¶ 26 (concluding that the notice and service provisions of the city's ordinance did not constitute unconstitutional violations of due process as applied to the property owner because while the property owner was not "personally served with the

notice of violations or the condemnation award," he had actual notice of the violations).

{¶51} We next conclude that appealing to the BZA was an administrative remedy available to SP9 and S&K. Section 17.1 of the Resolution states that appeals "may be taken by *any person aggrieved * * * by any decision of the Zoning Inspector.*"[2] (Emphasis added.) A person is "aggrieved" if he or she has an interest in the subject matter of the litigation that is "immediate and pecuniary" and not just "a remote consequence of the judgment." *Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 177 (2001), citing *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.*, 140 Ohio St. 160, 161 (1942). "Thus, in order to have standing to appeal, a person must be 'able to demonstrate a present interest in the subject matter of the litigation which has been prejudiced' by the judgment appealed from." *Id.*, quoting *Willoughby Hills v. C.C. Bar's Sahara, Inc.*, 64 Ohio St.3d 24, 26 (1992).

{¶52} Here, again assuming for purposes of our analysis that SP9 and S&K are "persons" under the Resolution, SP9 and S&K were "persons aggrieved" and had standing to appeal the NOV under Section 17.1 of the Resolution. S&K had a present, immediate, and pecuniary interest in the subject matter of the NOV because, if unchallenged, the NOV would force S&K to cease business at its

---

[2] The parties do not dispute that a notice of violation constitutes a "decision of the Zoning Inspector" that a party may appeal to the BZA under Section 17.1 of the Resolution. We agree that a notice of zoning violation amounts to an appealable "decision of the Zoning Inspector." *See, e.g., Schearer v. Millcreek Twp.*, 3d Dist. Union No. 14-09-13, 2009-Ohio-3820, ¶ 4, 20. *See also Hay*, 2002-Ohio-4765, at ¶ 23.

current location. SP9 had a present, immediate, and pecuniary interest in the subject matter of the NOV because, if unchallenged, the NOV would force its tenant to cease business on SP9's property. Perhaps the best evidence that SP9 and S&K were "persons aggrieved" by the NOV is that they filed the underlying declaratory judgment action. Therefore, the administrative remedy of appealing to the BZA was available to SP9 and S&K.

{¶53} Finally, we conclude that an appeal to the BZA could have provided the relief SP9 and S&K seek in the underlying declaratory judgment action—namely, a declaration that S&K's business at the White Barn Property is permissible under the Resolution. Section 19.7.1 of the Resolution explains that among the duties of the BZA is to "[h]ear and decide appeals where it is alleged there is an error in any order, requirement, decision or determination made by an administrative official * * *." (Plaintiffs' Ex. 2, Resolution at Section 19.7, at 19-3). *See also* R.C. 519.14(A). In exercising that duty, the BZA may "reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from, and may make such order, requirement, decision, or determination as ought to be made, and to that end has all powers of the officer from whom the appeal is taken." R.C. 519.14. In other words, had SP9 and S&K appealed and persuaded the BZA that they were correct, the BZA could have reversed Zimmerly's decision to issue the NOV. The likelihood that the BZA

would have granted the relief SP9 and S&K sought is not relevant to whether the BZA could have legally granted the relief.

**{¶54}** SP9 and S&K argue that "Section 20.14 must be reviewed and applied in the context of the underlying facts." (SP9 and S&K's Brief at 7). Specifically, SP9 and S&K point out that Robert had twice been prosecuted criminally for alleged zoning violations, and they argue that Section 20.14 of the Resolution provides that an "agent or other person who commits, participates in, assists in or maintains [a zoning] violation may each be found guilty of a separate offense and suffer the penalties herein provided." These arguments are legally irrelevant.

**{¶55}** We concluded above that the NOV and its service satisfied Section 20.13, the notice and service provision of the Resolution. We also concluded that SP9 and S&K were allowed to appeal the NOV to the BZA and, therefore, had an administrative remedy available to them. This is sufficient to warrant application of the doctrine of exhaustion of administrative remedies, as applied by the trial court. To the extent SP9 and S&K argue that Robert could not be both a "person responsible" under Section 20.13.5 of the Resolution and an "agent or other person" to be criminally prosecuted under Section 20.14 of the Resolution, they are mistaken. Those designations are not mutually exclusive.

**{¶56}** In addition, despite SP9 and S&K's contention that "Section 20.14 must be reviewed and applied in the context of the underlying facts," they ignore

underlying facts that contradict their argument. Namely, before being prosecuted criminally for zoning violations, Zimmerly notified *Robert* of the zoning violations in an August 18, 2009 notice—a notice that Robert appealed. It was not until Robert's efforts to pursue zoning reclassification or amendment failed and the zoning violations continued that he was prosecuted criminally.

{¶57} SP9 and S&K also mention in one sentence, without citing supporting authority, that "[t]he NOV issued by Zimmerly does not indicate Robert [ ], to whom it was issued, or any other person has a right to file an appeal to the BZA under Section 19.7.1 of the [Resolution] or R.C. 519.04." (SP9 and S&K's Brief at 6). It is the duty of SP9 and S&K, not this court, to demonstrate their assigned error through an argument that is supported by citations to legal authority and facts in the record. *Marion v. Cendol*, 3d Dist. Marion No. 9-12-59, 2013-Ohio-3197, ¶ 8. Nevertheless, to the extent SP9 and S&K argue that the NOV was incomplete or ineffective because it did not contain a notification of the right to appeal the NOV to the BZA, we reject that argument. First, Section 20.13 of the Resolution, which governs the contents of a notice of zoning violation, does not require notice of the right to appeal. Second, the right of any "aggrieved person" to appeal to the BZA is set forth in Section 17.1 of the Resolution. Third, Robert was aware of the right to appeal a notice of zoning violation to the BZA because he did so in the past.

{¶58} For the reasons above, we hold that under the unique circumstances of this case, the trial court did not abuse its discretion when it dismissed SP9 and S&K's complaint for declaratory judgment because SP9 and S&K failed to exhaust the administrative remedy available to them.

{¶59} SP9 and S&K's assignments of error are overruled.

### The Township Parties' Assignment of Error No. I

**The trial court erred to the prejudice of the Cross-Appellants when it held the Appellants' causes of action for declaratory judgment were not precluded by collateral estoppel.**

### The Township Parties' Assignment of Error No. II

**The trial court erred to the prejudice of the Cross-Appellants when it denied the Cross-Appellants' Motion for Involuntary Dismissal on the issue of whether Cross-Appellees adduced sufficient evidence that their business operation was a permitted use pursuant to Section 8.1.5 of the 1995 Richland Township Zoning Resolution.**

{¶60} In their first assignment of error, the Township Parties challenge the trial court's conclusion in its January 17, 2014 judgment entry that the Township Parties did not prove the affirmative defense that the doctrine of res judicata barred SP9 and S&K's complaint. In their second assignment of error, the Township Parties argue that the trial court improperly concluded in its decision concerning the Township Parties' Civ.R. 41(B)(2) motion that SP9 and S&K presented sufficient proof to support their claim that S&K's operation involves the "[s]ale at retail of any industrial product including the repair or maintenance of

equipment or facilities used in any residential or industrial connection" and is therefore a permitted use under the Resolution.

App.R. 3(C) governs cross-appeals and provides:

(1) Cross appeal required. A person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shall file a notice of cross appeal within the time allowed by App.R. 4.

(2) Cross appeal and cross-assignment of error not required. A person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal or to raise a cross-assignment of error.

App.R. 3(C).

{¶61} Here, the trial court's ultimate judgment was in favor of the Township Parties—it dismissed SP9 and S&K's complaint because they failed to exhaust the administrative remedies available to them. In rendering its judgment dismissing the complaint, the trial court relied solely on SP9 and S&K's failure to exhaust administrative remedies, and the Township Parties do not seek to change the trial court's decision to dismiss the complaint.

{¶62} We acknowledge, however, that in the trial court's January 17, 2014 judgment entry, it addressed the merits of whether the doctrine of res judicata barred SP9 and S&K's complaint and reached a conclusion adverse to the Township Parties. Nevertheless, the trial court ultimately entered judgment in the Township Parties' favor, and in light of the trial court's dismissal of SP9 and S&K's complaint, application of the doctrine of res judicata is merely "a ground other than that relied on by the trial court" in dismissing the complaint. The same is true concerning whether SP9 and S&K's use of the property is a permitted use under the Resolution—an issue that the trial court decided against the Township Parties in its entry ruling on the Township Parties' Civ.R. 41(B)(2) motion. In other words, the trial court did not rely on that issue in dismissing SP9 and S&K's complaint, so it is merely "a ground other than that relied on by the trial court."

{¶63} Accordingly, the Township Parties' use of a cross-appeal to assert its arguments is improper. *See Ohio Assn. of Pub. School Emps./AFSCME Local 4, AFL-CIO v. Madison Local School Dist. Bd. of Edn.*, 190 Ohio App.3d 254, 2010-Ohio-4942, ¶ 79 (11th Dist.). Because the Township Parties do not seek to obtain relief different than that granted by the trial court—namely, dismissal of SP9 and S&K's complaint—the Township Parties should have presented their arguments in defensive cross-assignments of error. *See id.* at ¶ 78-79, citing *Rzeszotarski v. Sanborn*, 11th Dist. Geauga No. 96-G-1906, 1996 WL 649111, *9 (June 7, 1996). And even treating the Township Parties' assignments of error as

cross-assignments of error, they are moot because we overruled SP9 and S&K's assignments of error, resulting in affirmance of the trial court's judgment. *Conley v. Endres Processing Ohio, L.L.C.*, 3d Dist. Wyandot No. 16-12-11, 2013-Ohio-419, ¶ 23.

{¶64} Therefore, we dismiss the Township Parties' cross-appeal and decline to address their arguments because they are moot in light of our disposition of SP9 and S&K's assignments of error.

{¶65} Having found no error prejudicial to the SP9 and S&K herein in the particulars assigned and argued, we affirm the judgment of the trial court and dismiss the Township Parties' cross-appeal.

*Judgment Affirmed;*
*Cross-Appeal Dismissed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**